IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

THE AMERICAN AUTOMOBILE ASSOCIATION, INC.                           PLAINTIFF

v.                                                        CIVIL ACTION NO. 1:24-CV-65-SA-DAS

AAA AUTO CARE, LLC d/b/a AAA AUTO CARE;
TAYLOR BRAGAN; LINDSAY CRUSE BRAGAN                           DEFENDANTS

ORDER AND MEMORANDUM OPINION

The American Automobile Association, Inc. ("AAA") initiated this trademark infringement action on April 3, 2024 by filing its Complaint [1] against AAA Auto Care, LLC; Taylor Bragan; and Lindsay Cruse Bragan ("the Defendants"). Before the Court is AAA's Motion for Default Judgment [14]. The Court is prepared to rule.

*Relevant Factual and Procedural Background*

The Complaint [1] alleges that Defendant AAA Auto Care is an auto repair shop using AAA's famous and distinctive "AAA marks" without authorization. Taylor Bragan and Lindsay Bragan are the alleged owners of AAA Auto Care.

The Complaint [1] brings the following claims: federal trademark infringement, federal false designation of origin and unfair competition, federal trademark dilution, Mississippi trademark dilution, common law trademark infringement, and common law unfair competition.

Each of the Defendants was personally served on April 22, 2024. No answer or responsive pleadings have been filed. On AAA's Motion for Entry of Default [10], the Clerk entered default as to each defendant on June 17, 2024.

On June 25, 2024, AAA filed a Motion for Default Judgment [14]. The Court held a hearing on the Motion [14] on August 27, 2024. At the hearing, AAA's counsel advised that all pleadings have been mailed to the Defendants. The Defendants did not appear at the hearing.

*Analysis and Discussion*

"Pursuant to 'Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff.'" *Gaskill-Clayborn v. Mighty Oaks Child Development Cntr., LLC*, 2020 WL 8642296, at *1 (N.D. Miss. Nov. 23, 2020) (citing *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015)). "[T]here are three steps to obtaining a default judgment: first, default by the defendant; second, entry of default; and third, entry of a default judgment." *Id.* (citing *Gray v. MYRM Holdings, L.L.C.*, 2012 WL 2562369, at *3 (W.D. Tex. June 28, 2012)). The first two steps have been satisfied here. The only question before the Court is whether a default judgment should be entered.

"To determine whether a default judgment should be entered, the Court conducts a three-question analysis: (1) 'whether the entry of default judgment is procedurally warranted;' (2) 'whether there is a sufficient basis in the pleadings for the judgment;' and (3) 'what form of relief, if any, the plaintiff should receive.'" *Id.* (citing *J & J Sports*, 126 F. Supp. 3d at 814).

I.    *Procedural Justification*

"To determine whether a default judgment is procedurally warranted, a court should consider (1) 'whether material issues of fact are at issue;' (2) 'whether there has been substantial prejudice;' (3) 'whether the grounds for default are clearly established;' (4) 'whether the default was caused by a good faith mistake or excusable neglect;' (5) 'the harshness of a default judgment;' and (6) 'whether the court would think itself obliged to set aside the default on the defendant's motion.'" *American Fidelity Assurance Co. v. Archie*, 2023 WL 2776205, at *2 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

2

Turning to factor one, where a party fails to answer or respond to the complaint, there are no material facts at issue. *EW Polymer Grp., LLC v. GSX Int'l Grp., Inc.*, 622 F. Supp. 3d 232, 237 (M.D. La. 2022) (citing *Lindsey*, 161 F.3d at 893). Second, a party's failure to respond may prejudice a plaintiff because it "threatens to bring the adversary process to a halt, effectively prejudicing [its] interests." *American Fidelity Assurance Co.*, 2023 WL 2776205 at *2 (citation omitted). Third, the grounds for default (default and entry of default) are clearly established. *See id.* Fourth, no evidence in the record indicates that the failure to answer or respond to the Complaint [1] was a result of a good faith mistake or excusable neglect. Fifth, "[the] failure to file a responsive pleading or otherwise defend the instant lawsuit mitigates the harshness of a default judgment." *EW Polymer Grp., LLC*, 622 F. Supp. 3d at 237 (citing *Lindsey*, 161 F.3d at 893). Sixth, the record contains no facts that would oblige the Court to set aside the default judgment if challenged. All factors weigh in favor of entry of default judgment in favor of AAA.

## II.    *Sufficient Basis in the Pleadings*

Next, the Court must determine whether there is a sufficient basis in the pleadings for a default judgment. *Gaskill-Clayborn*, 2020 WL 8642296 at *1 (citing *J & J Sports Prods., Inc.*, 126 F. Supp. 3d at 814). "Even when a defendant is in default, a plaintiff is not 'entitled to a default judgment as a matter of right.'" *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) (citation omitted). "[T]he Court must assess the merits of Plaintiff's claims and determine whether Plaintiff has a claim for relief." *EW Polymer Grp., LLC*, 622 F. Supp. 3d at 237 (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "[T]he factual allegations in the complaint must 'be enough to raise a right to relief above the speculative level.'" *American Fidelity Assurance Co.*, 2023 WL 2776205 at *3 (citing *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015)). "In conducting this analysis, 'the district court takes as true the

facts asserted by a plaintiff against a defaulting defendant' because '[t]he defendant, by his default, admits the plaintiff's wellpleaded [sic] allegations of fact.'" *Id.* (citing *Escalante*, 34 F.4th at 492).

The Complaint [1] brings six claims, some of which can be addressed together.

A.  *Count I: Federal Trademark Infringement (Lanham Act, 15 U.S.C. § 1114); Count V: Common Law Trademark Infringement (MISS. CODE ANN. § 75-25-23)*

"To prevail on a claim of federal trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, a plaintiff must show (1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark." *Alliance for Good Gov. v. Coalition for Better Gov.*, 901 F.3d 498, 505 (5th Cir. 2018) (citing *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)) (additional citation omitted).[1]

As to the first element, "[t]o be legally protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Id.* at 507 (quoting *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)). The registration of a mark with the Patent and Trademark Office ("PTO") "is prima facie evidence that the mark is inherently distinctive." *Id.* (quoting *Nola Spice*, 783 F.3d at 537) (internal alterations omitted). The Complaint [1] lists seven trademarks registered with the PTO, including what appears to simply be the name "AAA" and the "AAA approved auto repair" logo. *See* [1] at p. 6. Copies of the registered marks are attached to the Motion [14]. *See* [14], Ex. 1.

As to the second element, "a plaintiff must show that the defendant's use of the mark creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product or service at issue." *Alliance for Good Gov.*, 901 F.3d at 508 (quoting

---

[1] A common law trademark infringement claim involves the same elements and considerations. *See T.M.T., LLC v. Midtown Market Wine & Spirits, LLC*, 310 So.3d 1217 (Miss. Ct. App. 2021) (considering Fifth Circuit caselaw in evaluating trademark infringement claim).

*Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008)) (internal quotation marks omitted). The Fifth Circuit considers the following eight nonexhaustive "digits" to assess the likelihood of confusion: "(1) strength of the mark; (2) mark similarity; (3) product or service similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id.* (quoting *Am. Rice*, 518 F.3d at 329).

The Complaint [1] alleges facts that tend to support most of these factors. In particular, the Complaint [1] alleges that AAA began business in 1902 and has 60 million card-carrying members as well as a number of products, services, and member organizations. One of AAA's services includes endorsing or sponsoring auto repair shops. Defendants operate a business called "AAA Auto Care" and allegedly advertise on the internet, including Facebook. AAA alleges that Defendants know that their use of the AAA marks erroneously conveys that their business is sponsored or endorsed by AAA. The Complaint [1] also alleges that the Defendants' infringement is intentional because AAA has called, emailed, and sent mail to the business asking it to discontinue use of the name and received no response.

Considering these allegations, there is a sufficient basis in the pleadings for a default judgment as to the trademark infringement claims.

B. *Count II: Federal False Designation of Origin and Unfair Competition (Lanham Act, 15 U.S.C. § 1125(a)); Count VI: Common Law Unfair Competition*

"Section 1125(a) [] creates two distinct bases of liability: false association and false advertising." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). AAA brings a false association claim, which is synonymous with a "false designation of origin" claim. *Transparent Energy, LLC v. Premiere Marketing, LLC*,

2020 WL 4678438, at *6 (N.D. Tex. July 28, 2020) (citing *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 (3d Cir. 2017)) (additional citations omitted).

False association, federal unfair competition, and common law unfair competition claims have the same elements as a trademark infringement claim under the Lanham Act. *Id.*; *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992) (Stevens, J., concurring) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'" ) (citation omitted); *Git-R-Done Prod., Inc. v. Giterdone C Store, LLC*, 226 F. Supp. 3d 684, 691 (S.D. Miss. Dec. 28, 2016) ("As with federal law, the benchmark of Mississippi common law on trademark infringement and unfair competition is the likelihood of confusion.") (citations omitted).

In light of the allegations discussed in the section above, there is a sufficient basis in the pleadings for a default judgment as to the false association, unfair competition, and common law unfair competition claims.

C.  *Count III: Federal Trademark Dilution (Lanham Act, 15 U.S.C. § 1125(c); Count IV: Mississippi Trademark Dilution (Miss. Code. Ann. § 75-25-25)*

To state a dilution claim under Section 1125(c), the plaintiff must show that (1) it owns a famous and distinctive mark; (2) that the defendant has commenced using the mark in a manner that dilutes those marks; (3) that the similarity between its marks and the defendant's marks gives rise to an association between the two marks; and (4) that the association is likely to impair the distinctiveness of the AAA marks or harm the reputation of the marks. *See Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012).[2]

---

[2] The Mississippi dilution statute requires a similar showing: "The owner of a mark which is famous in this state shall be entitled, subject to the principles of equity, to an injunction against another's use of a mark, commencing after the owner's mark becomes famous, which causes dilution of the distinctive quality of the owner's mark[.]" MISS. CODE ANN.  § 75-25-25.

The Complaint [1] alleges that the AAA name and marks are famous and distinctive, pointing to the age of the company and its 60 million members. Defendant AAA Auto Care's business name includes the distinctive "AAA" registered mark. *See* [14], Ex. 1. The Complaint [1] alleges that AAA Auto Care uses both the name and mark to promote the business, which erroneously conveys that it is associated with or sponsored or endorsed by AAA. AAA alleges the Defendants' use of the mark will damage its reputation and lessen the capacity of AAA's marks to distinguish products and services actually affiliated with AAA, thereby diluting the distinctive quality of the marks. There is a sufficient basis in the pleadings for a default judgment as to the dilution claims.

### III. Relief Requested

AAA seeks injunctive relief, costs, and attorneys' fees. The Complaint [1] originally contained a request for damages, but the Motion [15] specifically provides that AAA is no longer seeking damages.

#### A. Permanent Injunctive Relief

The Lanham Act permits a court to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent" trademark infringement, false association, and dilution. 15 U.S.C. § 1116(a). "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation[.]" *Id.*

To obtain permanent injunctive relief, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 12 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).

As to the first factor, the Defendants, by their default, have admitted the well-pleaded factual allegations of the Complaint [1]. *See Nishimatsu Const. Co., Ltd.*, 515 F.2d at 1206. As such, AAA has succeeded in proving the violations and is entitled to a presumption of irreparable harm. As to the second factor, the Court agrees with AAA's argument that monetary damages will be inadequate because its reputation is damaged and monetary damages will not prevent future infringing activity. *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008) (finding threat to company's goodwill "could not be quantified"). As to the third factor, "the injury to [AAA] outweighs any harm to Defendants because Congress has declared [that the] conduct in which Defendants engaged is illegal." *CrossFit, Inc. v. Columbus Crossfitness, LLC ("CrossFit I")*, 2014 WL 1747624, at *3 (N.D. Miss. May 1, 2014). As to the fourth factor, the Court agrees with AAA's argument that the public interest is served by protecting consumers from deception and requiring compliance with Congressional statutes. *See id*. The Court finds that the applicable factors are satisfied.

AAA seeks to enjoin the following conduct:

> 1. Using without the authorization of AAA any of AAA's marks, logos, and trade names, including the designation "AAA" or any other name, logo, or mark that includes the designations "AAA" or that is confusingly or deceptively similar to any of AAA's marks, logos, and trade names, either alone or in conjunction with other words or symbols, as part of any trademark, service mark, logo, trade name, corporate name, assumed name, domain name, on or in relation to any goods sold or distributed by the Defendants, or in any other manner; and

> 2. Using combination letter "A's" in any form or manner that would tend to identify or associate Defendants or their business or services with AAA, including in the marketing, promotion, advertising,

identification, sale or distribution of goods or services, or in any other manner[.]

[15] at p. 17.

AAA additionally requests "that the Court order Defendants to file with the Court and serve on AAA, within 30 days of issuance of such order, a report in writing and under oath setting forth the manner and form of Defendants compliance with all Court-ordered injunctive relief." *Id.*

The Court finds that the injunctive relief sought is sufficiently specific and "no broader than necessary to prevent the deception." *Diageo N. Am., Inc. v. Mexcor, Inc.*, 661 F. App'x 806, 813-14 (5th Cir. 2016) (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 671 (5th Cir. 2000)). The Court grants the permanent injunction as requested.

*B. Costs and Attorneys' Fees*

The Lanham Act allows recovery of costs for certain Lanham Act violations, including the ones at issue here. *See* 15 U.S.C. § 1117(a). The Motion [14] does not include a request or invoice for costs.

The Act permits the court to award reasonable attorneys' fees in "exceptional cases." *Id.* "[T]he exceptional case is one in which the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate, or willful." *CrossFit, Inc. v. Columbus CrossFitness, LLC ("CrossFit II")*, 2014 WL 2711972, at *3 (N.D. Miss. June 16, 2014) (citing *Tex, Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 685, 697 (5th Cir. 1992)).

Here, the Complaint [1] alleges that AAA Auto Care's infringement is willful, deliberate, and in bad faith. As noted above, the Complaint [1] asserts that AAA called, emailed, and sent certified letters to AAA Auto Care, requesting that AAA Auto Care discontinue the use of its marks. The Complaint [1] alleges that on one call, AAA left a message with the associate who answered the phone and received no response. As a result of the Defendants' default, these

9

allegations are deemed true and the Court may award AAA attorneys' fees.[3] Notably, this Court has awarded attorneys' fees in a similar case. In *CrossFit II*, the Complaint alleged that the defendant's infringement was willful and deliberate. 2014 WL 2711972 at *3. The defendant did not respond, default judgment was granted, and the allegation was deemed admitted. *Id.* at *1. Because the defendant's actions were deemed willful and deliberate and because the defendant "completely disregarded this litigation by failing to appear," this Court awarded attorneys' fees. *Id.* at *3 (citing *T-Mobile USA Inc. v. Shazia & Noushad Corp.*, 2009 WL 2003369, at *4 (N.D. Tex. July 10, 2009)).

When the Court chooses to award attorneys' fees, the "lodestar" method is used for their calculation. *Id.* The lodestar method is calculated by multiplying the number of hours spent on the matter by a reasonable hourly rate for such work in the community. *Id.* After calculating the lodestar amount, the Court may adjust the amount of attorneys' fees based on the relative weight of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.*

Beginning with the reasonableness of an attorney's hourly rate, the court usually looks to prevailing rates in the community, competence, experience, and skill. *See Benham v. City of Jackson, Miss.*, 2022 WL 2033333, at *10 (S.D. Miss. June 5, 2022). However, "[w]hen an attorney's billing rate is not contested, it is *prima facie* reasonable." *DeArmond v. Alliance Energy Services, LLC*, 2018 WL 2463207, at *5 (E.D. La. June 1, 2018) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)). Michael C. Williams, co-counsel for AAA, submitted

---

[3] In its Motion [15], AAA alleges that it can show willful infringement regardless of the Defendants' default. In addition to the fact that AAA notified the Defendants and the fact that the AAA is well-known in the industry, AAA can show that AAA Auto Care knew of its marks because the Lanham Act provides that registration of a mark "shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072.

a declaration setting forth the experience and hourly rates of the attorneys that worked on this case. *See* [14], Ex. B. Williams submitted a supplemental declaration with updated time entries after the hearing on the Motion [14]. *See* [18]. Williams is a partner at Bradley Arant Boult Cummings LLP with 11 years of experience in intellectual property litigation. The declaration submits that his typical hourly rate is $480, though he is requesting $375 per hour in this case. Jason Tullos is an associate at Bradley with one year of experience in complex commercial litigation. The declaration submits that his typical hourly rate is $375, though he is requesting $300 per hour in this case. Attached to the declaration is an itemized invoice of time entries showing Williams billed 20.1 hours and Tullos billed 8.5 hours. Multiplied by their hourly rates, the requested lodestar amount is $10,087.50. *See* [18] at p. 1.

"There is a strong presumption that the lodestar award established by the district court is the reasonable fee." *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F. App'x 341, 341 (5th Cir. 2007) (per curiam) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1044 (5th Cir. 1999)). In exceptional cases, the Court may increase or decrease the lodestar based on the factors outlined in *Johnson*:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 n.18 (5th Cir. 2006) (citing *Johnson*, 488 F.2d at 17-19).

11

The Fifth Circuit has cautioned that any *Johnson* factor already considered in the lodestar amount should be disregarded in determining whether the lodestar should be adjusted. *Hendrix v. Evergreen Hauling*, 2019 WL 138160, at *4 (N.D. Miss. Jan. 8, 2019) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). Factors one, two, three, four, five, seven, eight, and nine are usually implicated in the lodestar calculation. *See Michael v. Boutwell*, 2015 WL 9307838, at *2 (N.D. Miss. Dec. 21, 2015) (citing *Sales v. Bailey*, 2015 WL 1825060, at *4 (N.D. Miss. Apr. 22, 2015)) (additional citations omitted). Moreover, since *Johnson* was decided, the Supreme Court has held that the sixth factor should not be considered. *Sales*, 2015 WL 1825060 at *4 (citing *City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S. Ct. 638, 120 L. Ed. 2d 449 (1992)). This leaves the Court to consider factors ten, eleven, and twelve. AAA makes no argument as to the *Johnson* factors. However, there is no evidence in the record suggesting that a departure from the lodestar amount is warranted, and the requested amount appears to be reasonable. The declaration alleges that the attorneys' hourly rates are reduced and that they did not include time entries for two attorneys from Covington and Burling LLP who assisted in investigation and legal strategy. And notably, the facts in *CrossFit* appear to be very similar to the facts of this case, and the attorneys in *CrossFit* billed 83.7 total hours. *See CrossFit II*, 2014 WL 2711972 at *3-5. The Court awards AAA $10,087.50 in attorneys' fees.

*Conclusion*

For the reasons set forth above, the Motion for Default Judgment [14] is GRANTED. The Court hereby enters judgment against the Defendants AAA Auto Care, LLC d/b/a AAA Auto Care; Taylor Bragan, and Lindsay Cruse Bragan, jointly and severally, for attorneys' fees in the amount of Ten Thousand and Eighty-Seven and 50/100 Dollars ($10,087.50).

The Defendants are hereby ORDERED to cease the following conduct:

12

      1. Using without the authorization of AAA any of AAA's marks, logos, and trade names, including the designation "AAA" or any other name, logo, or mark that includes the designations "AAA" or that is confusingly or deceptively similar to any of AAA's marks, logos, and trade names, either alone or in conjunction with other words or symbols, as part of any trademark, service mark, logo, trade name, corporate name, assumed name, domain name, on or in relation to any goods sold or distributed by the Defendants, or in any other manner; and

      2. Using combination letter "A's" in any form or manner that would tend to identify or associate Defendants or their business or services with AAA, including in the marketing, promotion, advertising, identification, sale or distribution of goods or services, or in any other manner.

The Defendants are hereby ORDERED to file with the Court and serve on AAA, within 30 days of issuance of this Order, a report in writing and under oath setting forth the manner and form of Defendants' compliance with all Court-ordered injunctive relief. AAA is directed to inform the Court of the Defendants' compliance or lack thereof. Should the Defendants fail to comply with the Court's Order, the Court will take further action as it deems necessary.

SO ORDERED, this the 17th day of December, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

13